### CODINGTON v. INTERBOROUGH RAPID TRANSIT CO.

(Supreme Court, Appellate Term, First Department. May 5, 1915.)

CARRIERS &#9755;346—INJURIES TO PASSENGER—SUFFICIENCY OF EVIDENCE.

    In an action for injuries to one attempting to board a subway train, the weight of evidence *held* to show that the accident was caused by plaintiff running into the door of the car after it had been shut, and not by the closing of the door upon him as he was entering the car.

    [Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1401; Dec. Dig. &#9755;346.]

Appeal from City Court of New York, Trial Term.

Action by Perly M. Codington against Interborough Rapid Transit Company. Judgment for the plaintiff, and defendant appeals. Reversed, and new trial ordered.

Argued March term, 1915, before LEHMAN, HENDRICK, and COHALAN, JJ.

James L. Quackenbush, of New York City (Louis S. Carpenter, of New York City, of counsel), for appellant.

McLaughlin & Stern, of New York City (Alonzo G. McLaughlin and Martin Lippman, both of New York City, of counsel), for respondent.

---

HENDRICK, J. Plaintiff sued for personal injuries caused by the alleged negligence of a guard upon one of defendant's subway trains in closing a door before plaintiff had an opportunity to enter. The plaintiff was attempting to enter the rear door of a car about the middle of a train. The train was at a standstill, and the door about opposite of the ticket chopper's box. The question at issue is correctly stated in appellant's brief as follows:

"The question of fact in the case was as to whether the car door was wide open when the plaintiff started to step on the car platform, and was closed by the guard in such a manner as to strike the plaintiff's shoulder, the blow forcing the plaintiff back upon the station platform, following which the glass broke and fell into the plaintiff's face, or whether the door was closed, or substantially closed, when plaintiff reached the car, and plaintiff struck the glass with the right side of his head, causing the glass to break and inflict the cut."

The plaintiff's version of the occurrence is this:

"I paid my fare and went forward towards the train, * * * the rear door of the car which was open. The man in front of me got aboard, and just as I was about to put my foot upon the platform of the car the guard slammed the door shut, and hit me on the shoulder. The glass broke, cut my face in dropping, and some one grabbed me and took me over to the bench alongside the ticket chopper."

He says that he was "hurrying" to catch the train. He swears positively that as he attempted to enter the car the door was fully open. There was no one behind him that pushed or crowded him. A young lady employed by the company, of which the plaintiff is the manager of one branch, was the only witness sworn on plaintiff's behalf, who saw the accident. She said that she was directly behind plaintiff when he bought his ticket; that he was hurrying; and that "he went to get the train, and when they slammed the door the door hit him, and the glass broke and showered all over him and cut him." She testified that the door of the car was open.

Six witnesses were produced and sworn on the part of the defendant. Four of these were employés of the defendant, being the ticket chopper, a special officer of defendant in charge of the station platform, a porter, and the guard in charge of the door on the car at the time of the accident. The fifth witness was an employé of Ward & Gow, and was filling a gum machine at the time; and the sixth was a passenger, who, as he testifies, was thrust aside by the plaintiff at the ticket window as he was about to purchase a ticket ahead of the plaintiff. Each of these witnesses testified that they saw the plaintiff running for the train; that before he reached it the door was closed, and that, being unable to check himself quickly, he ran or slid into the door, his head and shoulders striking the glass and breaking it, his face being cut as he came in contact therewith.

These witnesses differ as to exactly when the door closed, but all agree that the door closed after plaintiff passed the cancellation box and before he reached the car. The ticket chopper testified that plaintiff was making such haste when he went past the ticket box as to drop his ticket on the floor, and not into the box. The door was 6 feet 4 inches in length, and had a rubber air cushion extending along its edge

for 6 feet 1 inch.  As the door closes it strikes a door post, and the cushion is for the purpose of taking the jar off the door as it strikes the post.  There was a glass in the door 21 inches by 31 inches, firmly imbedded in putty, with beading around it.  The top of the glass was 5 feet 11 inches from the car platform, and comes to within 5 inches of the top of the door.  The width of the door "style" or panel in which the glass sets is 6 inches wide, and the glass sets into these panels three-eighths of an inch.  The plaintiff was 6 feet ¾ inches tall and weighed 225 pounds, and says that as he started to enter the door he was standing upright.  The witnesses all agreed that the glass broke with a "crash."

The defendant claims that the verdict is against the weight of evidence, not only by reason of the number of witnesses and their evidence in direct contradiction of plaintiff and his witness, but by reason of the inherent improbability of the occurrence of the accident as claimed by the plaintiff.  With this contention this court is in accord. The plaintiff did not dispute the testimony of the defendant's witness to the effect that he was running towards the train.  There was no crowd upon the station platform or preceding him to impede his progress towards the car.  Assuming, as claimed by plaintiff, that the door was fully open when he attempted to board the car, and that plaintiff's left shoulder was at the edge of the opening into which the door entered when fully closed, his right shoulder would have been the width of his body nearer the cushion on the edge of the door, and it is impossible to conceive that the force of the door passing through the short space between the outer edge of the door and right shoulder of the plaintiff would have resulted in the blow which would cause the breaking of the glass in the door and force plaintiff back upon the platform of the station, and this without some injury to or mark upon plaintiff's shoulder, of which no claim is made.  It was not shown or claimed that the impact of a door upon the door post when fully closed by the guard without obstruction would cause the breaking of glass in a door constructed as this was, and certainly it is reasonable to believe that such an impact must be more severe than one against the yielding shoulder of a man.  It is vastly more reasonable to say that the breaking of the glass was caused by a direct blow upon the glass itself, or a wrench upon the door frame caused by the striking of plaintiff's body against the side of the door.

Again, plaintiff swears he was standing erect as he entered the car, that his face was cut by "falling" glass, and that the "glass broke and came down and cut my face."  His height was, as before stated, 6 feet ¾ inches; the top of the glass in the door was 5 feet 11 inches; so that nearly all of the glass panel was below the point of injury on plaintiff's face, and it would appear that the cut was caused by glass flying upward, instead of downward.  This is more in accord with defendant's claim that plaintiff's face was cut by his head striking and breaking the glass.  Upon a careful examination of the whole record, and in view of the improbability of the accident having been caused as claimed by plaintiff, and the more reasonable and probable cause being given by the defendant's witnesses, we think that the plaintiff

failed to sustain the burden of proof cast upon him to show that the accident occurred.as claimed by him, and there should be a new trial.

Judgment reversed, and new trial ordered, with costs to appellant to abide the event. All concur.